UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tim Blackwell, | No. 2:20-cv-01968-KJM-CKD |
| Plaintiff, | ORDER |
| v. | |
| Commercial Refrigeration Specialists, Inc. & Climate Pros, LLC, | |
| Defendants. | |

Plaintiff Tim Blackwell brought this putative class action and a representative action under the Private Attorney Generals Act (PAGA) against defendants Commercial Refrigeration Specialists, Inc. and Climate Pros, LLC (collectively, defendants), alleging wage and hour violations and unfair business practices in connection with his former employment with defendants. *See generally* First Am. Compl. (FAC), ECF No. 33. Blackwell moves to certify a class and five subclasses, *see* Mot. to Certify (Mot.), ECF No. 43, and moves to strike numerous declarations filed with defendants' opposition to class certification, *see* Mot. Strike, ECF No. 47. Defendants oppose, Opp'n Mot. Certify (Opp'n), ECF No. 44; Opp'n Mot. Strike, ECF No. 48, and the matters are fully briefed, Reply, ECF No. 46. For the reasons discussed below, the court **grants in part** and **denies in part** the **motion to certify**. The court **denies** the **motion to strike.**

I.  BACKGROUND

Climate Pros is a commercial refrigeration and HVAC company specializing in maintenance, repair, construction and equipment sales and installation. Ex. A, Decl. of Todd Ernest (Ernest Decl.) ¶ 4, ECF No. 44-1. Climate Pros LLC is the successor entity to Commercial Refrigeration Specialists, Inc. Not. Removal ¶ 2, ECF No. 1; Ex. A, Dep. of Todd Ernest (Ernest Dep.) at 116:13-20, ECF No. 43-3; *see also* Ex. C, ECF No. 44-1.[1] Since April 2016, defendants have employed approximately 305 service technicians across four different branch locations in California. Opp'n at 2; Ernest Decl. ¶ 7, ECF No. 44-1. These technicians sometimes hold different job titles, including service journeymen and service apprentices. Ernest Decl. ¶¶ 6, 8. Technicians typically drive company trucks from their homes to customer locations at the start of each day. Ernest Dep. at 184:4-13. Technicians belong to one of fifteen different union locals, and their wages, hours and working conditions are governed by their local's collective-bargaining agreement (CBA). Ernest Decl. ¶ 8. Blackwell was a service technician employed by defendants from August 2018 to December 2019. Ex. B, Decl. of Tim Blackwell (Blackwell Decl.) ¶ 2, ECF No. 43-3.

Defendants' policy is to compensate employees for any time spent driving beyond the first hour of commute time. Ernest Dep. at 99:18–101:14. Some technicians work after-hours shifts, where they respond to customer requests. *Id.* at 77:15–22. Defendants' policy is to pay technicians for these shifts. *Id.* at 190:16-191:1. Technicians enter their own time using a mobile app on their phones. Ernest Decl. ¶ 12; Ex. B, Decl. of Norm Furtado (Furtado Decl.) ¶ 10, ECF No. 44-1. Defendants provide training on how to use the mobile app. Ernest Dep. at 57:1–15, 58:15–59:3. Because defendants expect technicians to account for all their time each workday, technicians have the option of recording their meal breaks, training, and nonpaid or paid commute time. Ernest Decl. ¶ 12; Furtado Decl. ¶ 11. Technicians may take rest breaks whenever they want; they do not need to request breaks from a supervisor or dispatcher. Ernest Decl. ¶ 19; Furtado Decl. ¶ 25.

---

[1] Both parties include excerpts of the Ernest deposition in exhibits attached to their briefings. The court will cite to both exhibits interchangeably as "Ernest Dep."

In July 2020, Blackwell filed this putative class action in Sacramento County Superior Court. Not. Removal Ex. A (Compl.), ECF No. 1-1. Defendants removed the matter, invoking this court's diversity jurisdiction under the Class Action Fairness Act. *See generally* Not. Removal. In June 2021, the court consolidated this putative class action with Blackwell's representative action under the PAGA. *See* Prev. Order (June 25, 2021) at 2, ECF No. 32. In July 2021, Blackwell filed his consolidated, operative complaint. *See generally* FAC. Among other claims, Blackwell argues defendants (1) failed to provide required rest breaks by improperly treating split shifts in a workday as two separate shifts, effectively allowing rest breaks only after every 3.5 hours of work; (2) failed to pay for travel time; and (3) failed to pay for on-call, after-hours time spent fielding customer phone calls. *See generally* FAC; Mot. Mem. (Mem.) at 1, ECF No. 43.

Blackwell now moves to certify a class of defendants' current and former service technicians and other employees performing similar work in California between April 6, 2016 and "the present." Mem. at 1. Blackwell also seeks certification of five subclasses as defined below:

1. Rest Break Subclass: All defendants' current and formerly employed service technicians, service journeymen, service apprentices, and any person performing similar work regardless of job title who worked three and one-half (3.5) hours or more in a day in California during the period from April 6, 2016, to the present;

   Or, as an alternative: All defendants' current and formerly employed service technicians, service journeymen, service apprentices, and any person performing similar work regardless of job title who worked three and one-half (3.5) hours or more in a day in California without receiving all paid 10-minute breaks during which they were relieved of all duties, during the period from April 6, 2016, to the present;

2. Minimum Wage Subclass: All defendants' current and formerly employed service technicians, service journeymen, service apprentices, and any person performing similar

3

work regardless of job title who worked in California and were not properly paid all minimum wages during the period from April 6, 2016, to the present;

3. On-Call Service Employee Subclass: All defendants' current and formerly employed service technicians, service journeymen, service apprentices, and any person performing similar work regardless of job title who worked in California at any time during the period from April 6, 2016 to the present, and who also fielded customer after hours on-call requests to determine immediate need for service.

4. & 5. Two remaining subclasses—wage statement subclass and terminated employee subclass—are derivative of the rest break and on-call service subclasses.

Mot. at 1–2. As noted, defendants oppose the motion to certify, *see* Opp'n, and Blackwell replied, *see* Reply. Blackwell also moves to strike declarations filed by defendants in their opposition to class certification. *See generally* Mot. Strike. Defendants oppose, Opp'n Mot. Strike, and Blackwell has not replied to this motion.

The court held a hearing on both motions on January 21, 2022. Kenneth Yoon appeared for Blackwell. Judson Stelter and Michael Chropowicz appeared for defendants. *See* Min. Order, ECF No. 49.

**II.    LEGAL STANDARD**

Litigation by a class is "an exception to the usual rule" that only individual named parties bring and conduct lawsuits. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation and internal quotation marks omitted). Only when a class action "promot[es] . . . efficiency and economy of litigation," should a motion for certification be granted. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983). A court considers whether class litigation promotes "economies of time, effort, and expense, and . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment.

To be eligible for certification, the proposed class must be "precise, objective, and presently ascertainable." *Williams v. Oberon Media, Inc.*, No. 09-8764, 2010 WL 8453723, at *2 (C.D. Cal. Apr. 19, 2010). The proposed class definition need not identify every potential class

4

member from the very start. *See, e.g.*, *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 645 (4th Cir. 1975); *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). The requirement is a practical one. It is meant to ensure the proposed class definition will allow the court to efficiently and objectively ascertain whether a particular person is a class member, *see In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010), for example, so that each putative class member can receive notice, *O'Connor*, 184 F.R.D. at 319.

Class certification is governed by Federal Rule of Civil Procedure 23. The court must first determine whether to certify a putative class, and if it does, it must then define the class claims and issues and appoint class counsel. Fed. R. Civ. P. 23(c)(1), (g). Under Rule 23(c)(5), for purposes of certification, a subclass is treated exactly like a class. To be certified, a putative class must meet the threshold requirements of Rule 23(a) and the requirements of one of the subsections of Rule 23(b), which defines three types of classes. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Here, Blackwell seeks certification only under Rule 23(b)(3), which provides for certification of a class where common questions of law and fact predominate and a class action is the superior means of adjudication. Mem. at 2.

Rule 23(a) imposes four requirements on every class. First, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Second, questions of law or fact must be common to the class. Fed. R. Civ. P. 23(a)(2). Third, the named representatives' claims or defenses must be typical of those of the class. Fed. R. Civ. P. 23(a)(3). And fourth, the representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). If the putative class meets these requirements, Rule 23(b)(3) imposes two additional requirements: first, "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and second, "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).

"The party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO C.L.C. v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010). This burden is real; Rule 23 embodies more than a "mere pleading standard." *Wal-Mart*, 564 U.S. at 350. The party must "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original). The trial court must then conduct a "rigorous analysis" of whether the party has met its burden, *id.* at 351, and "analyze each of the plaintiff's claims separately," *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). The court must verify the putative class's "actual, not presumed, conformance with Rule 23(a) . . . ." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). This inquiry often overlaps with consideration of the merits of the plaintiffs' substantive claims. *Wal-Mart*, 564 U.S. at 351–52. Indeed, "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original) (citing *Wal-Mart*, 564 U.S. at 351–52); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("[O]ur cases requir[e] a determination that Rule 23 is satisfied, even when that requires inquiry into the merits of the claim."). These same "analytical principles" also apply to the court's analysis of whether the plaintiff meets its burden under Rule 23(b). *Comcast*, 569 U.S. at 34.

## III. ANALYSIS

### A. Predominance

The court first considers Rule 23(b)'s predominance requirement, which Blackwell's proposed rest break and minimum wage subclasses do not satisfy. His on-call subclass, however, does satisfy predominance as explained below.

#### 1. Rest Break Subclass

Blackwell suggests two common issues of the rest break subclass predominate over any individual questions: (1) defendants' policy not to provide rest breaks for split shifts; and (2) defendants' failure to maintain a policy "to affirmatively relieve employees of all duty during

rest breaks, but rather, placed the burden on workers to figure out when to take rest breaks." Reply at 1; Mem. at 9–10 (citing Cal. Code Regs. tit. 8 § 11040).  In the context of a wage and hour lawsuit, "common issues predominate in those cases where the plaintiff proffers sufficient evidence to demonstrate that an unofficial policy exists and applies uniformly to all class members." *Campbell v. Vitran Express Inc.*, 2015 WL 7176110, at *7 (C.D. Cal. Nov. 12, 2015). But "if there is no evidence of a uniform company policy, then the case largely rests on the individual circumstances of each employee's missed [ ] breaks." *Id.*  Here, Blackwell has not proffered sufficient evidence of a uniform policy.

In fact, Blackwell himself argues defendants let employees figure out their own rest breaks. Mem. at 9. Blackwell knew he could take breaks, no one told him not to take breaks, and nothing prevented him from taking breaks while working. Ex. D, Dep. of Tim Blackwell (Blackwell Dep.) at 63:19–25, 64:8–13, 66:17–23, 67:1–9, 105:22–106:17, ECF No. 44-1. Defendants' CEO Todd Ernest also testified at deposition that technicians may take a break "whenever they need to," and "there's no one policing this for them to say they cannot take a rest break." Ernest Dep. at 238:14–239:10. Most technicians' rest breaks were determined under their local unions' policies, not defendants' policy. Ernest Dep. at 74:6–13; Ernest Decl. ¶ 22; Furtado Decl. ¶ 26. As a result, Blackwell's case largely rests on the individual circumstances of each employee.

Blackwell's evidence does show defendants had "*no policy* to affirmatively relieve employees of all duty during rest breaks, but rather, placed the burden on workers to figure out when to take rest breaks." Reply at 1 (emphasis added). But "that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices." *Wal-Mart*, 564 U.S. at 355 (emphasis in original). Because Blackwell has not identified a common issue that is capable of class-wide resolution, his rest break subclass does not meet the predominance requirement.

        **2.**      **Minimum Wage Subclass**

To support certification of the minimum wage subclass, Blackwell argues defendants "maintain a common practice of not paying for travel time recorded as commute time, even

7

though defendants maintain an undisputed policy to check employees' recorded time for accuracy and correct it as needed." Reply at 2. But defendants' policy allows technicians to run personal errands during their travel, though this time is unpaid. Ernest Decl. ¶ 10; Furtado Decl. ¶ 29. Technicians are the ones responsible for inputting their time into the mobile app, including unpaid or paid commute time. Ernest Decl. ¶ 12; Furtado Decl. ¶ 11. As a result, supervisors reviewing time records would have no reason to second-guess an employee's entry of unpaid travel time, since employees may have, permissibly, spent that time engaged in personal business. Opp'n at 15. "Because the Court cannot determine whether a driver performed work during the interval in question without undertaking individualized inquiries," *Cornn v. UPS*, 2005 U.S. Dist. LEXIS 30419, at *17–18 (N.D. Cal. Aug. 26, 2005), the subclass does not satisfy the predominance requirement.

### 3. On-Call Subclass

Blackwell's on-call subclass satisfies the predominance requirement. Blackwell points to three common issues shared by the subclass: (1) whether employees should be compensated for all on-call time; (2) whether employees were paid for on-call time, including time spent fielding customer calls; and (3) whether defendants knew or should have known employees were performing work for which they were not, but should have been, paid. Mem. at 14–17. These questions are subject to common proof, such as relevant policies of the defendants and testimony from defendant witnesses. *Id*. at 14. Moreover, individual inquiries would not overwhelm the common issues; Blackwell's expert, Dr. Brian Kriegler, testified defendants' timekeeping data and daily schedules can identify the extent to which employees were not paid for after-hours work. Ex. F, Decl. of Brian Kriegler (Kriegler Decl.) ¶¶ 7–8, ECF No. 43-3.

Defendants argue plaintiff does not establish commonality because plaintiff has not identified any common policy requiring technicians to work off the clock. Opp'n at 19. Defendants point to written policies expressly prohibiting technicians from working off-the-clock. *Id*. Defendants thus argue the subclass's case requires an individualized inquiry about whether an employee took any after-hours customer calls, or whether the employee was directed not to enter time. *Id*. Although Blackwell does not identify any common policy, Blackwell challenges

a system-wide practice: he says, with support, defendants systematically did not pay technicians for the on-call standby time as required under defendants' policy. Mem. at 6. Blackwell offers expert opinion and other declarations supporting this allegation. Kriegler Decl. ¶ 16; Blackwell Decl. ¶¶ 5–10; Ex. C, Decl. of Tim Brogdon ¶¶ 7–13, ECF No. 43-3; Ex. D, Decl. of Matthew Brown Decl. ¶¶ 6–8, ECF No. 43-3; Ex. E, David Cummings Decl. ¶¶ 5–9, ECF No. 43-3.

Defendants also cite *Cornn* to support their argument that individualized inquiries preclude class certification. *See* Opp'n at 20 (citing 2005 U.S. Dist. LEXIS 30419, at *17). *Cornn* is distinguishable on the facts. In *Cornn*, the court held individualized questions predominated over whether time spent changing into uniforms, shining shoes, and gathering supplies could be counted as hours worked, and, if so, how much time was spent on these activities. 2005 U.S. Dist. LEXIS 30419, at *18. Here, plaintiff argues technicians should be compensated for any time spent on-call, including fielding customer calls. Even a cursory review of the law indicates time spent fielding customer calls should be counted as hours worked. *See, e.g.*, Cal. Code Regs. tit. 8 § 11040(2)(K). Furthermore, defendants set the length of on-call shifts, so it is possible to determine how much time technicians spent on-call. The challenges in *Cornn* are not insurmountable issues here.

The common policy and the evidence of record satisfy the predominance requirement for the on-call subclass. The court next considers whether the on-call subclass satisfies other requirements under Rules 23(a) and (b).

**B.     Rule 23(a)(1) Numerosity**

The on-call subclass satisfies the numerosity requirement. "While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." *Johnson v. Serenity Transp., Inc.*, No. 15-CV-02004-JSC, 2018 WL 3646540, at *6 (N.D. Cal. Aug. 1, 2018) (quoting *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 526 (N.D. Cal. 2012)). Here, Blackwell claims over 100 persons belong to the on-call subclass. Mem. at 17. Although defendants argue not all technicians served on-call, the court accepts Blackwell's estimate at this stage. Thus, the numerosity requirement is met.

### C. Commonality

As discussed above in the predominance discussion, the on-call subclass shares a common question of law or fact.

### D. Typicality

Blackwell's claim is typical of the on-call subclass because he claims he was not paid for the time fielding customer phone calls during his after-hour shifts. Mem. at 18. Defendants do not dispute the typicality of Blackwell's claims and defenses. *See generally* Opp'n. The subclass and Blackwell satisfy the typicality requirement.

### E. Adequacy

Blackwell and his class counsel meet the adequacy requirement. Two questions are relevant for the adequacy inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. 338. Although defendants argue Blackwell blames supervisors in the subclass for inadequate review of other subclass members' timesheets, *see* Opp'n at 18–19, this does not strike the court as a serious conflict of interest. Blackwell is challenging practices and policies of defendants, not individual supervisors. Even supervisors who neglected to review timesheets may have been subjected to the alleged unlawful practices. The court finds the adequacy requirement is satisfied.

### F. Superiority

Rule 23(b)(3) requires a court to consider four factors in determining whether a class action is the "superior" method of resolution:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P 23(b)(3). Regarding the first factor, "the class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A), when smaller dollar amounts are in controversy, this factor generally favors certification. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190–91 (9th Cir.). Resolution of this factor takes into account the policy of incentivizing legitimate claims even when individual damages are modest. *Amchem*, 521 U.S. at 617. Large, complex claims do not fit so well in a class as do smaller, simpler claims. *See Zinser*, 253 F.3d at 1190–91. Here, Blackwell asserts relatively small individual claims for underpayment. Mem. at 20. Such small claims do not make individual litigation attractive or sustainable. This factor favors certification.

The second factor, the "extent and nature of any litigation concerning the controversy already begun by or against class members," Fed. R. Civ. P. 23(b)(3)(B), is meant to "assur[e] judicial economy and reduc[e] the possibility of multiple lawsuits." *Zinser*, 253 F.3d at 1191 (quoting 7A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1780 at 568–70 (2d ed. 1986)). Here the parties have not described, and the court is not aware of any other related litigation. This factor does not stand in the way of certification.

The third factor is "the desirability or undesirability of concentrating the litigation" in this forum. Fed. R. Civ. P. 23(b)(3)(C). This is a statewide class action, and thus a non-California forum would appear undesirable. Although it would be possible to consider smaller classes within each federal judicial district in the state, a single class action representing class members across the state asserting state claims in the judicial district in which the defendant is located appears sufficiently desirable. This factor favors certification.

The fourth factor weighs the "likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). Plaintiff indicates he would like to try the case in two phases: the first to determine liability, and the second to determine damages. *See* Mem. at 13–15. The first phase would rely on defendant's policy documents as well as witness testimony to determine whether defendants' practice violated state law. *Id.* at 5. The second phase would rely more heavily on information gathered through Dr. Kriegler's analysis determining damages. Defendants have not challenged the manageability of the action. *See generally* Opp'n. On

balance, application of the four factors suggests a class action is the superior means to try the common questions of law and fact that predominate here.

The Ninth Circuit also has required district courts to consider alternative means of litigating a proposed class action. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996) ("A class action is the superior method for managing litigation if no realistic alternative exists."). Individual litigation, joinder, multidistrict litigation, or an administrative or other non-judicial solution may be superior. *See* 7A Charles A. Wright, et al., *Federal Practice & Procedure* § 1779 (3d ed. 2005). Because class members here have modest claims, individual litigation is unlikely to present a viable means of recovery. The number of potential plaintiffs, as many as a few hundred, also makes joinder impracticable.

Finally, the court considers defendants' argument that these claims are better suited to labor arbitrations. The lawsuit is not for a violation of the collective bargaining agreement; therefore, a labor arbitration would be inappropriate. *See DiMercurio v. Equilon Enterprises LLC*, 2021 WL 3885973, at *12 (N.D. Cal. Aug. 30, 2021).

The on-call service employee subclass satisfies the superiority requirement.

**G.      Ascertainability**

Although not raised as an issue by defendants, the court notes the on-call subclass definition poses an ascertainability issue. The use of the language "to the present" in defining the class period appears to "create[] a moving target and presents potential case management problems." *Gomez v. J. Jacobo Farm Lab. Contractor, Inc.*, 334 F.R.D. 234, 250 (E.D. Cal. 2019), *modified on reconsideration*, 2020 WL 1911544 (E.D. Cal. Apr. 20, 2020), *and modified*, No 1:15-1489, 2021 WL 431402 (E.D. Cal. Feb. 8, 2021). To cure this ascertainability issue, the court redefines the end date as the date of this certification order. *See id.*

For the reasons above, the court grants the motion to certify Blackwell's on-call subclass, with the redefined end date. Because his wage statement and terminated employee subclasses are derivative of the on-call subclass, those two subclasses also are certified.

### IV.   MOTION TO STRIKE

As noted above, Blackwell moves to strike defendants' declarations submitted with their opposition to class certification. *See generally* Mot. Strike. Because this court does not rely on those declarations in this order, the motion is **denied** as moot.

### V.   CONCLUSION

The court **denies in part** the motion for class certification as to rest break subclass and the minimum wage subclass.

The court **grants in part** the motion for class certification as to the on-call subclass, wage statement subclass, and terminated employee subclass with the end dates redefined as the filed date of this order.

The court **denies** the motion to strike as moot.

This order resolves ECF Nos. 43 & 47.

IT IS SO ORDERED.

DATED: October 17, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE